UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WILLIAM H. PERRY and HOLLY PERRY,

                                 Plaintiffs,

                                                                               8:19-CV-0726

        v.                                                                    (TJM/DJS)

CLAXTON-HEPBURN MEDICAL CENTER, *et al.*,

                                 Defendants.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| STEINER & FISH, P.C.<br>Attorneys for Plaintiffs<br>130 Water Street<br>Brooklyn, New York 11201 | DAVID M. FISH, ESQ.<br>NORMAN STEINER, ESQ. |
| BURKE, SCOLAMIERO & HURD, LLP<br>Attorneys for Defendants<br>Claxton-Hepburn Medical Center<br>and Rashmi Thatte, M.D.<br>7 Washington Square<br>Albany, New York 12205 | JEFFREY E. HURD, ESQ.<br>STEVEN V. DEBRACCIO,<br>ESQ.<br>THOMAS A. CULLEN, ESQ. |
| MONACO COOPER LAMME & CARR PLLC<br>Attorneys for Defendant DiGiacco<br>1881 Western Ave., Suite 200<br>Albany, New York 12203 | ADAM H. COOPER, ESQ.<br>MICHELLE A. STORM, ESQ. |

**DANIEL J. STEWART**
**United States Magistrate Judge**

## DECISION and ORDER

      Plaintiffs commenced this diversity action on June 19, 2019. Dkt. No. 1. The

Complaint alleges claims for medical malpractice and negligence arising out of the

alleged failure of Defendants to diagnose and properly treat Mr. Perry's cerebrovascular

accident (CVA) which occurred on or about October 22, 2018. *Id.* The claim against the Medical Center includes an allegation that the facility failed to properly hire, train, and supervise its medical staff, and create or establish and implement necessary policies and procedures to ensure patients received appropriate medical care. *Id.* at ¶ 62.

On September 18, 2019, a Rule 16 scheduling conference was held with all counsel, during which the Court set the deadline for discovery out one year, to September 18, 2020. Dkt. No. 38. The parties actively engaged in discovery and jointly requested that the deadlines to complete that process be extended. The Court agreed, and set a new deadline of April 22, 2021. Dkt. No. 64. Thereafter, the deadline was extended again to June 17, 2021, which is the present and final date. Dkt. No. 66. According to counsel, to date the parties have exchanged paper discovery, and conducted depositions of both Plaintiffs, Plaintiffs' daughter, all of the Defendants, two nurses, and the Director of the Emergency Department at Claxton-Hepburn. Dkt. No. 76 at p. 1.

As discovery progressed, Plaintiffs served a deposition subpoena upon the Hospital Defendant's former Chief Executive Officer, Nathan Howell.[1] The impetus for the subpoena was a letter received by Plaintiffs' attorney from a "Concerned Physician" who was critical of Dr. DiGiacco's competence and demeanor, and indicated that he or she had reported those concerns to Mr. Howell. Dkt. No. 79-1 at p. 1. Counsel for the Hospital objected and requested a conference with the Court. That conference was held on January 29, 2021. During the conference Claxton-Hepburn's counsel raised concerns

---

[1] Another deposition was noticed for the current CEO of the Medical Center, Richard Duval, but the Court understands that Plaintiffs have agreed to an alternate 30(b)(6) witness.

regarding the subject matter of the proposed deposition, and his belief that such questioning could implicate New York State's quality assurance review privilege. The Court agreed to stay the Howell deposition pending briefing on the issue. Dkt. No. 75. That briefing has now been received and reviewed. Dkt. Nos. 76, 77, & 79.

In their letter briefs, counsel for the Medical Center and counsel for Defendant Dr. DiGiacco make numerous arguments in support of their Motion to Quash the deposition subpoena issued to Nathan Howell. *See* Dkt. Nos. 76 & 77. They argue that New York's peer review privilege, or quality assurance privilege, codified in Education Law § 6527(3) and Public Health Law § 2805-m, prevent a deposition of the former CEO regarding his response to complaints by other doctors and medical staff against Dr. DiGiacco. Dkt. No. 76 at p. 4; Dkt. No. 77 at p. 7. As set forth by Dr. DiGiacco's counsel:

> To compel a prior CEO of a hospital to sit for a deposition and provide unfiltered information about the history of the quality of care and treatment provided by a physician, as well as complaints made about a physician and his abilities by patients and colleagues would go against the clear intent of the Education and Public Health Laws. At the heart of the protected information is the ability to self-review and provide peer review assessment of medical professionals. Subjecting Mr. Howell to testify with regard to these privileged exchanges would go against the core of the Legislative intent.

Dkt. No. 77 at p. 7.

Counsel for the Defendants also contend that the anonymous letter criticizing the care provided by Dr. DiGiacco to other patients is based upon hearsay; would not lead to any admissible evidence; pertains to a time period prior to the events at issue in the lawsuit and therefore is irrelevant; and at most is propensity evidence which would properly be excluded at trial. Dkt. No. 76 at pp. 2-3; Dkt. No. 77 at pp. 3-4. Accordingly, they argue

- 3 -

that the proposed testimony does not satisfy the proportional relevancy standard. Dkt. No. 77 at pp. 3-4. Next, while conceding that the scope of federal discovery is broad, defense counsel notes that the Court has the authority to limit the scope of discovery where the information can be obtained from some other source. Dkt. No. 76 at pp. 3-4 & Dkt. No. 77 at pp. 5-6. They assert that the best source of information concerning Dr. DiGiacco's treatment and care of Plaintiff would be the testimony of the medical professionals involved in that care, not former CEO Nathan Howell who had retired prior to Mr. Perry's admission. Dkt. No. 76 at p. 4.

Finally, an argument is made that any discovery regarding the claim against the Medical Center for negligent hiring, training, and retention, is itself irrelevant. Dkt. No. 77 at pp. 4-5. Defendants' argument in this regard is that any claim involving negligent retention would require an underlying finding of medical malpractice. Once that finding of malpractice is made, and assuming that the doctor acted within the scope of his employment, coverage would be provided by the Medical Center. Any verdict on the claim of negligent hiring, training, and supervision would be redundant, which is why these cases are often bifurcated. *Id.* at pp. 4-5. Therefore, they assert that any discovery on the secondary theory is simply unnecessary. *Id.*

Plaintiffs' counsel views the matter differently. Counsel believes that the deposition of Mr. Howell will lead to relevant evidence which, under the Federal Rules, need not be admissible evidence. Dkt. No. 79 at p. 1. Here, the anonymous letter specifically references notice to Mr. Howell regarding prior misconduct of Dr. DiGiacco, and therefore appears directly relevant to the Plaintiffs' claim of negligent hiring and

retention. *Id*. at pp. 1-2. Plaintiffs' counsel concedes that a negligent retention claim will be dismissed on motion where the employee acted within the scope of their employment; however, he asserts that an employee who acts intentionally is not covered by this rationale. *Id*. at pp. 2-3. Plaintiffs' counsel asserts that whether Dr. DiGiacco acted negligently or intentionally is not clear based upon the present state of the record, and no motion has been made by Defendants as to this issue. *Id*. Finally, as to the quality assurance privilege, Plaintiffs note that it is Defendants' burden to establish the prerequisites for the imposition of such a privilege, and no such showing has been made in this case. *Id*. at pp. 3-4.

The Court turns first to the privilege issue. Initially, Defendants are correct that a federal court, sitting on a diversity case premised upon malpractice and negligence, is required to apply the state law privilege. FED. R. EVID. 501. New York Education Law and Public Health Law lay out requirements for reviewing physicians' credentials, competence, and performance periodically and in certain circumstances. This is done, among other reasons, to evaluate staff privileges and as part of improving negative health care outcomes. The Education Law provides:

> Neither the proceedings nor the records relating to performance of a medical or a quality assurance review function or participation in a medical and dental malpractice prevention program nor any report required by the department of health pursuant to section twenty-eight hundred five-l of the public health law described herein, including the investigation of an incident reported pursuant to section 29.29 of the mental hygiene law, shall be subject to disclosure under article thirty-one of the civil practice law and rules except as hereinafter provided or as provided by any other provision of law. No person in attendance at a meeting when a medical or a quality assurance review or a medical and dental malpractice prevention program or an incident reporting function described herein was performed, including

>the investigation of an incident reported pursuant to section 29.29 of the mental hygiene law, shall be required to testify as to what transpired thereat. The prohibition relating to discovery of testimony shall not apply to the statements made by any person in attendance at such a meeting who is a party to an action or proceeding the subject matter of which was reviewed at such meeting.

N.Y. Educ. Law § 6527(3).

Similarly, New York Public Health Law provides that "[t]he information required to be collected pursuant to [those provisions of statute] and any incident reporting requirements imposed upon diagnostic and treatment centers pursuant to the provisions of this chapter shall be kept confidential and shall not be released except to the department or pursuant to [certain provisions of the law]," and specifically notes that they shall not be subject to disclosure in litigation except as specifically provided. N.Y. Pub. Health Law § 2805-m(2).

According to the terms of the statute then, it is specifically information collected pursuant to the statutory requirements that is shielded from production. New York State courts interpret this limitation narrowly. Initially, "[t]he party seeking to invoke the quality assurance privilege bears the burden of demonstrating that the documents sought were prepared in accordance with the relevant statutes." *Kivlehan v. Waltner*, 36 A.D.3d 597, 598 (2d Dep't 2007). While "it is not necessary for a hospital to establish that it acquired the information during the course of a review proceeding undertaken with respect to the particular incident that is the subject of the malpractice action . . . a hospital is required, at a minimum, to show that it has a review procedure and that the information for which the exemption is claimed was obtained or maintained in accordance with that

review procedure." *Bush v. Dolan*, 149 A.D.2d 799, 800-01 (3d Dep't 1989) ("Since the purpose of the exemption is to encourage hospitals to review the shortcomings of their physicians . . . it would be counterproductive to apply the exemption in a case where a hospital never undertook such a review.").

New York courts reviewing this issue generally require detailed affidavits demonstrating that the information sought was created for these specific purposes. *See Kivlehan v. Waltner*, 36 A.D.3d at 598-99 (finding insufficient "an affidavit from [hospital's] credentials coordinator, who asserted that [the doctor's] file 'only contains information that was collected for quality assurance purposes and to comply with relevant provisions of the Public Health Law concerning the credentialing of physicians'" because they failed to demonstrate that the documents "were actually generated at the behest of" the Quality Assurance Program); *Est. of Savage v. Kredentser*, 150 A.D.3d 1452, 1455 (3d Dep't 2017) (finding "conclusory statement that [report] was prepared for quality assurance purposes and was shielded by the subject statutes is patently insufficient to satisfy the required standard" where defendants "did not submit an affidavit or other information from anyone with first-hand knowledge establishing that a review procedure was in place or that the report was obtained or maintained in accordance with any such review procedure") (collecting cases).

In considering a similar peer review privilege, Judge Murtha in Vermont authorized discovery regarding conversations between hospital officials regarding the decedent's care in a claim premised, in part, upon a failure to supervise. *Robinson v. Springfield Hosp.*, 2010 WL 503096, at *3 (D. Vt. Feb. 5, 2010). "Because the dividing

line between peer review and normal business operations can be unclear, courts generally apply the peer review privilege only when the formalities of a peer review process are clearly apparent. . . . Moreover, on the facts provided by both parties, there are no clear signals to indicate these meetings were a part of the peer review process." *Id.*

In the present Motion it has not been established that the statements made to Mr. Howell, or his response, were part of an established peer review process; were referred to that peer review process; or that Mr. Howell was even part of that process at the Claxton-Hepburn Medical Center. The Court specifically authorized the Defendants to submit *in camera* any documents relating to a peer review privilege that may be implicated by the deposition, but they did not do so. *See* Dkt. No. 75, Text Order dated Jan. 29, 2021. Indeed, Defendants have not submitted any particularized information that would allow the Court to make a finding that the proposed discovery will implicate the privilege. This fact, coupled with the fact that the Defendants' arguments are premised as a hypothetical, *see* Dkt. No. 76 at p. 5 (". . . material that, *even if it existed*, would clearly constitute quality assurance privileged materials.") (emphasis added), leads the Court to conclude that the prerequisites for the imposition of the state law privilege have not been established on this Motion, and therefore do not present a bar to the proposed deposition.

The Court also agrees that the proposed deposition falls within the proper confines of the case as it presently stands. It may well be that some of the information obtained is ultimately found inadmissible by the trial court, but that decision will be left for a later day and is not a bar to discovery. FED. R. CIV. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."). The testimony of

Mr. Howell is also appropriate in light of the fact that he was an individual named in the letter provided to Plaintiffs' counsel, and therefore it does not appear that the information could be obtained from some other source.

Finally, Defendants' argument that the negligent supervision claim will ultimately be dismissed, while a more substantial argument, ultimately does not carry the day. As correctly noted by Plaintiffs' counsel, there are still questions that persist regarding the nature of the underlying conduct and Claxton-Hepburn's liability for Dr. DiGiacco, who is said to be a private physician with privileges at the Medical Center. *McCarthy v. Mario Enterprises, Inc.*, 163 A.D.3d 1135, 1137 (3d Dep't 2018) (discussing intentional conduct); *Talavera v. Arbit*, 18 A.D.3d 738, 738-39 (2d Dep't 2005) (discussing gross negligence). Further, there is no stipulation or concession in the case presently that the Doctor was acting within the scope of his employment. Nor is there presently a motion filed to dismiss the negligent retention claim, and even if there were it is not this Court's purview to predict what the District Court might do on such a motion, whether by way of dismissal or bifurcation. Finally, discovery is nearing its close, and it would not be in the best interest of judicial economy to delay this last piece of discovery. Accordingly, Defendants' Motion to Quash the Subpoena is denied.

**WHEREFORE**, it is hereby

**ORDERED**, that Defendants' Motion to Quash the deposition subpoena (Dkt. Nos. 76 & 77) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order

upon the parties to this action.

    **SO ORDERED**.

Dated:   April 8, 2021
         Albany, New York

                                            Daniel J. Stewart
                                            U.S. Magistrate Judge